(40 Misc. Rep. 473.)

OGDEN et al. v. OGDEN et al.

(Supreme Court, Special Term, New York County. April, 1903.)

1. WILL—CONSTRUCTION—NATURE OF ESTATE.

Testator gave his residuary estate for two lives to trustees, with instructions to consider the corpus divided into a certain number of shares, and distribute the income thereof among named beneficiaries annually, and directed that after the lapse of the two lives the corpus should be divided in such a manner that the parties theretofore receiving the income only should be vested with the principal in the same proportion in which they were entitled to the income. There were no words of survivorship, gifts to a class, or to issue or legal representatives. Held, that the beneficiary took a vested interest in the principal on the death of the testator, and, where the beneficiary dies testate, the principal passes under his will, and does not go to the heirs at law and next of kin of the testator.

Action by Mariana A. Ogden and Andrew H. Green, executors of William B. Ogden, deceased, against Mariana A. Ogden and others, to construe a will. Decree rendered.

Mornay Williams, for plaintiffs.

Howland, Murray & Prentice (Charles P. Howland, of counsel), for defendants Emily O. Wheeler and others.

Johnston & Johnston (Edward W. S. Johnston, of counsel), for defendant Alex. McK. Jones.

Frederick S. Wait, for defendants Burley, etc.

Glover, Sweezy & Glover, for defendants Caroline O. Jones and others.

Cary & Whitridge (Willard Parker Butler and Sanford Robinson, of counsel), for defendant Emily O. Butler.

Daniel Seymour, for defendant Frances S. Whitehouse.

LEVENTRITT, J. This is an action for the construction of a will, and presents as the sole issue for determination the ever recurring question whether certain interests are vested or contingent. Briefly stated, the general scheme of the will is the creation of a trust, measured by two lives, during which the income of the estate, which is divided into a specified number of shares, is to be paid over to named beneficiaries, who are, after the termination of the trust, to receive the principal of the shares from which the income theretofore issued. The will is a very long document, but only two clauses—the third and sixth—are up for construction in this action. There has been a previous construction (Butler v. Green, 65 Hun, 99, 19 N. Y. Supp. 890), which involved the validity of certain bequests to charitable uses. That question is now eliminated.

William B. Ogden, the testator, died in August, 1877, a resident of this county, where his will was admitted to probate. He was childless, and left, him surviving, his widow, who is still living, four brothers and sisters, and certain children, and a nephew and niece, children of a sister who predeceased him. Excepting certain specific bequests and devises, the distribution of his entire estate was ultimately to be made among this group of persons. After appointing executors and trustees, the will devises and bequeaths to them all the testator's residuary estate in trust, with very broad powers of sale, investment, leasing, and administration. It was held in Butler v. Green, supra, that there was no equitable conversion of the real into personal property. The trust is measured by the lives of his widow and brother-in-law, during which term the trustees are to hold and manage the property, collect the entire income, and "to apply the same to the uses of the persons hereinafter mentioned in that behalf, in the manner and to the extent, and in the proportions hereinafter set forth." This is done in the third clause of the will, which reads, so far as material, as follows:

"Third. * * * I order and direct that my said executors and trustees shall deem all the property devised and bequeathed to them * * * as divided into twenty shares or portions, and my executors and trustees shall from time to time, and at least once in each year * * * apply and pay over such rents, issues, profits and income thereof * * * to the persons and in the proportions following."

Then follow very precise provisions as to the distribution of the income; every beneficiary being designated by name, and the members of each family being included in a separate paragraph. Thus the wife receives four shares, or 20 per cent. of all the income; his sister Emily B. Wheeler, an allowance of 6 per cent., which is to cease on her death; the six children of Emily B. Wheeler, all of whom are named, 4 per cent. each, to be increased on the death of the mother by the addition of her share, so that the six shall receive 30 per cent. in the aggregate; the two children of his sister Eliza A. Butler, designated by name, 2½ per cent., or a half share, each; the three children of his sister Caroline, by a first and second marriage, all specified with particularity, 2½ per cent., or a half share, each; the three children of his brother Mahlon Ogden, given by name, 5 per cent., or one share, each, to be increased in favor of one of the nephews named after the testator to two shares in a certain contingency, not here necessary to enlarge upon—these shares, however, not to·be paid to the parents until the children are of age; the two children of a deceased sister, indicated by name, 5 per cent., or one share, each. Finally there is a bequest of income to charitable use, which has been declared invalid so far as it issued from property in this state.

The principal is disposed of in the sixth clause of the will, reading as follows:

"From and after the decease of my said wife, Mariana O. Ogden, and my said brother-in-law, Edwin H. Sheldon, being the two lives now in being by which the right of my said executors and trustees to collect and receive the rents, issues and profits of my estate are limited, I give, devise and bequeath all and singular the real and·personal estate of which my said executors and trustees shall theretofore have received the rents, issues, and

profits, and all the rest, residue and remainder of my property and estate, whatsoever and wheresoever, not herein otherwise specifically devised and bequeathed in, to and amongst the beneficiaries under the trusts created by this will, in such manner that the parties theretofore receiving the income only shall receive and become vested with the estate and property out of which such income arose in the same relative shares and proportions in which they are entitled to said income, viz."

Then, in substantially the same paragraphing as under the third clause of the will, disposing of the income, the principal is, with immaterial variation, given to the same beneficiaries. Thus, in default of a devise by his wife, to her heirs four shares. Then follows this subdivision:

"(2) To the children of my said sister Emily B. Wheeler, namely, William O. Wheeler, Julia H. Wheeler, Emily O. Wheeler, Eleanor Wheeler, Caroline E. Wheeler, and Laura Wheeler, being six persons in all, six shares, or three-tenths of my said estate, but these shares, if vested during the lifetime of their said mother, shall be charged with the payment of an annuity of five thousand dollars per annum to her."

The other subdivisions of this paragraph it is not necessary further to particularize. They give to the named beneficiaries the exact share of the principal which under the similar subdivision of the third clause was the source of the income.

The occasion for construction arises through the death during the continuance of the trust term of two of the children of Emily B. Wheeler, namely, William O. and Julia H.; the former having died January 27, 1900, leaving a will, the executrix of which claims the distributable moneys to which her testator would have been entitled if living, and the latter having died December 22, 1899, as the wife of Charles C. Tiffany, also leaving a will, the executors of which likewise claim the distributable share to which their testatrix would have been entitled if living.

The precise question before the court is, who is at present entitled to these distributable moneys? Did they vest in Julia H. Tiffany and William O. Wheeler in their lifetime, or was their interest contingent upon their surviving the trust term? In the former case they passed under their respective wills; in the latter, the testator died intestate as to these shares, which then vested in his heirs at law and next of kin.

Frequent rereadings of the entire will have only strengthened the conclusion derived from the first cursory perusal that each of the 16 named beneficiaries who survived the testator took absolutely vested interests both in principal and income, indefeasible, descendible, devisable, and alienable. Measured by the rule of intent, or by that of the statute defining what are vested or contingent interests, or by those subordinate rules of construction which are resorted to for the purpose of elucidating intent, the result is the same. I find in this will no uncertainty of person or event which would make the interests contingent, nor do I find provision for any condition subsequent to divest an otherwise vested interest.

It is peculiarly true, in seeking the proper construction of a will, that there are always reported opinions which may be made to yield language in support of any proposition argued. But where that most

flexible of rules—the intent of the testator—is to be applied to discover the scope and limit of the testator's bounty, and where that intent may vary by the change of a word, the presence or absence of a punctuation mark, the existence of varying circumstances surrounding the execution of the will, it is apparent that "each case, as it arises, must be viewed and decided according to its own particular facts and circumstances, and will become a controlling precedent only where the facts are the same."   Roosa v. Harrington, 171 N. Y. 350, 64 N. E. 3.

I can discover but one unmistakable intent in this will.  It is to dispose of his entire residuary estate—barring the attempted charitable bequests—to 16 or 17 named beneficiaries, who included all his then living nieces and nephews.  There is no provision in favor of any afterborn children of his brothers and sisters; no gift to any one family group as a class; no conditions of survivorship; no limitation that division shall be made among those living at the time of distribution; no provision as to the disposition of shares of those who might die during the trust term, which, according to other portions of the will, it is quite apparent the testator expected to continue beyond 21 years.  Every individual object of the testator's bounty was living at the time he made his will, and all but one at the time of his death.  They were of all ages; marriages, births, and deaths were to be expected and foreseen, in the natural course of events; and we should expect to find, in a will drawn with such elaborateness and care as this one, that, had the testator intended to confer merely defeasible interests, he would have provided for contingencies which it is not unreasonable to assume he must have foreseen, instead of permitting a possible successive intestacy in portions of his estate, the extent of which could not be foretold, and which might ultimately embrace the larger part of it.  The testator certainly did not intend to die intestate as to any part of his property.  Possible deaths among those whom he did not intend to take shares in the principal proportionate to their shares in the income were in his mind, for he provides for the contingency arising on the death of his sister Emily O. Wheeler, whose "allowance is to cease on her decease."  In no other case is a share so to determine.  The inference, to me, at least, is irresistible that the others—especially the nephews and nieces—were to have his property in any event, under all circumstances and under all conditions, subject merely to the execution of the trust.

Constructions resulting in intestacy are sometimes forced upon the court, but I see no such compelling necessity in this case.  It is perfectly clear that the testator did not have in mind a class to be ascertained when the shares of principal were to be payable.  He was not contemplating changes in the character or number of persons who were the objects of his bounty.  The gift at the termination of the trust term is to individuals named, and their precise shares are set out.  The gift in each case was therefore distributive.  Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; Shangle v. Hallock, 6 App. Div. 58, 39 N. Y. Supp. 619.  The identity of these shares with those from which the income is to issue during the trust term is a

strong corroborative circumstance of an immediate vesting of the interests. Warner v. Durant, 76 N. Y. 133; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Dougherty v. Thompson, 167 N. Y. 472, 60 N. E. 760. In Warner v. Durant, Judge Folger says (at page 136):

"Where the gift is to be severed instanter from the general estate, for the benefit of the legatee, and in the meantime the interest thereof is to be paid to him, that is indicative of the intent of the testator that the legatee shall, at all events, have the principal, and is to wait only for the payment until the day fixed."

And in Dougherty v. Thompson—the case chiefly relied on by those arguing in favor of intestacy—Judge Landon says at page 484, 167 N. Y., and page 763, 60 N. E.:

"If the income intended for Stephen Jay Thompson had been the income of the share of the corpus intended for him, that would have been an indication of a vested gift of both."

What the testator did, in effect, was this: The trustees were to hold a share or shares for the benefit of a named beneficiary, pay to him the income, and on the termination of the trust pay to him the principal, for he gives "in such manner that the parties theretofore receiving the income only shall receive and become vested with the estate and property out of which such income arose in the same relative shares and proportions in which they are entitled to said income." Does not this import a present gift of income, and a present gift of the principal, with merely a deferred enjoyment in possession of the principal share? Especially so when we bear in mind that "a remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as vested" (Hersee v. Simpson, 154 N. Y. 500, 48 N. E. 891); that the law favors the vesting of estates; and that the presumption is that a testator intends that his dispositions shall take effect in enjoyment or interest at the date of his death (Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008).

What is there in this will that injects the element of contingency? It is argued with considerable force that the use of the term "vest" by the testator in several clauses shows the intention that vesting, in its technical legal sense, was to be deferred until the time specified. Thus it is argued that because the testator has provided in the sixth clause that, "from and after the termination of the measuring lives, he gives, devises, and bequeaths all his property in such manner that the parties theretofore receiving the income only shall receive and become vested with the estate," and because he has provided that the six Wheeler shares allotted in subdivision 2 of that clause, "if vested during the lifetime" of the mother, should be charged with the payment of an annuity to her, he has already expressed an intention to postpone vesting until the end of the trust term. Were these phrases considered standing alone, out of relation to all else in the will, a construction vesting the shares in interest only on the termination of the trust term might be justified. With nothing else to limit their meaning, they would have to be taken in their primary technical legal sense, and, as there would then be no other

indicia of the testator's intention, it would have to be held that the testator intended the technical sense which these words usually import. In other words, this would be a colorless will, where intention would have to be accepted as embodied in the ordinary legal meaning of the words used.

Taking the entire document as a unit, however, we have a different situation. My view of the intent, as thereby indicated, I have already expressed. Beyond that, however, the testator has by the dispositions and directions he has made, created a situation which the statute requires us to construe as vesting the estates in interest at the time of his death. The estates we are considering are future estates. Real Property Law (Laws 1896, p. 564, c. 547, § 27); Personal Property Law (Laws 1897, p. 507, c. 417, § 2). "A future estate is either vested or contingent. It is vested when there is a person in being who would have an immediate right to the possession of the property on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain." Real Property Law (Laws 1896, p. 564, c. 547, § 30); Personal Property Law, supra. Construed as of the time of the testator's death, and under the mandate of the statute, it is clear that all the beneficiaries of income and principal would have had an immediate right to the possession of the property on the determination of the intermediate or precedent estates, or, to paraphrase the leading case of Moore v. Littel, 41 N. Y. 80, that inasmuch as you can point to persons who, if the life estate would presently cease, would eo instanti et ipso facto have an immediate right of possession, the remainder is vested. It could, of course, be divested by the inclusion of a proper condition subsequent (Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811; Dougherty v. Thompson, supra); but the will under consideration with its named beneficiaries, whose interests in principal and income are precisely set apart, with its absence of any gifts over, words of survivorship, gifts to a class, or issue or legal representatives (Clark v. Cammann, 160 N. Y. 328, 54 N. E. 709), fails to yield anything on which to predicate the existence of such a condition. The testator has by clear language created a set of facts with regard to the estates given, which the statute says shall be held to be vested as of the time of his death. He has omitted any provision for subsequent defeasance. Under these circumstances, the actual facts rise superior to a technical construction sought to be injected into a particular word.

But even so far as this particular word is concerned, the whole scheme and tenor of the will would indicate that the testator used the word "vest," in the phrases construed, not in the sense of vesting in interest, but in that of vesting in possession. This is certainly the meaning to be educed from the four corners of the will. Without repeating the argument from intent, it is sufficient to say that the underlying meaning and purpose of the testamentary gifts are to give to 16 or 17 persons, and to no others, a definite share of the estate, the possession of which is postponed for a definite period, but the income of which shall immediately accrue. In this connection it may be

pointed out that the whole will, as well as surrounding circumstances, points to the conclusion that the postponement of the vesting in possession was in part, at least, for the benefit of the estate. It appears that at the time of his death a not inconsiderable portion of the testator's estate consisted of unimproved real property, held for development and a rise, and the evident wish of the testator is easily inferable that he desired it kept intact until such time when its potential value could be best realized. These considerations, arguing a postponement of the vesting for the estate's benefit, rather than for that of the beneficiaries, are an additional reason in favor of treating that vesting as one of interest at the death, and one of possession at the end of the trust term. The authorities so hold. Robert v. Corning, 89 N. Y. 225; Dougherty v. Thompson, 167 N. Y. 486, 60 N. E. 760; Marsh v. Wheeler, 2 Edw. Ch. 156. There is also ample authority, both in text-books and decided cases, where the word "vest" has been used other than in the strict sense of the conveyancer. Mr. Jarman cites many cases where the "natural and etymological meaning" of the term has been followed in cases of death before the vesting of a legacy, where upon the context the "meaning is said to be vested in possession." 2 Jarman, Wills (6th Am. Ed.) 1624, and cases there cited. Thompson v. Thompson, 28 Barb. 432, is a case in point in this state. See, also, Parkin v. Hodginson, 15 Sim. 293; Hopper v. Demarest, 21 N. J. Law, 525.

I see no force in the argument that the testator could not have intended that a beneficiary dying during the trust term should have the testamentary disposition of his share, or that, in the absence of such disposition, it should descend to the beneficiary's heirs and next of kin, rather than to those of the testator. In the first place, the argument is quite permissible that the testator intended just that, or, rather, that he gave the shares absolutely, and so was not concerned with the manner or time of disposition of the respective shares to be made by the respective beneficiaries. The omission to provide for gifts over in the case of death during the trust term, or to bequeath in the alternative or on contingency to children, issue, or representatives, can well be construed into deliberate purpose. With beneficiaries of all ages, with deaths likely to occur in a trust term of length, it is not fair to assume that the omission was an oversight, rather than intentional. But even should it be said that the testator did not contemplate or expect a death or deaths during the trust term, and that he would have excluded from his bounty devisees or heirs of a beneficiary so dying, it cannot, therefore, be argued that the construction of the will adopted is contrary to the testator's intent. That must be determined as of the time of the making of the will, not as of a subsequent time when certain events have happened which may or may not have been anticipated by him. "We should not impute to the words of a testator a meaning derived from a process of looking backwards." Matter of Russell, 168 N. Y. 177, 61 N. E. 168. It is inadmissible to argue that because a testator, had he foreseen certain happenings, would have provided against them, he did by his intention, as expressed, in fact provide against them. That would not be giving controlling force to the rule of intent, but would be creating a new intent after the fact.

I have examined with care all the cases cited by the defendants in support of their view that only contingent estates were created, and, without extended review, may say that I find them all distinguishable. While they contain language applicable to the case at bar, based on subordinate rules of testamentary construction which these defendants invoke, they are not pertinent, for it is well established that these rules are only aids towards reaching true intent. They cannot be invoked to defeat, but only to support, it. Where a will is colorless, and there is otherwise no indication of the testator's purpose, one or the other of these rules may become controlling in construction, but one and all must yield to indications of a contrary intent. So in this case where we have a clear intent, not violative of any statutory restriction, it must rise paramount. In Dougherty v. Thompson, supra, strongly relied on by the defendants, where there were no words of gift, no naming of children or giving their number, where there were words of survivorship, and constant readjustments to be made on the coming of age of various beneficiaries, who also had no interest in income during minority, and where no intestacy resulted by reason of the construction adopted, the entire basis of the decision is the intent of the testator, whose purpose was manifest that the death of any beneficiary should increase the shares of the living.

In Townshend v. Frommer, 125 N. Y. 469, 26 N. E. 805, which involved complicated questions under the law of trusts and powers, there was a trust following an earlier one for the benefit of the grantor during her life, to convey the lands to her children "living at her decease, and the surviving children of such of them as may then be dead." The intention deduced by the court was to postpone the accruing of any future interests until the event (i. e., the death) happened. See Campbell v. Stokes, supra; Canfield v. Fallon, 26 Misc. Rep. 349, 57 N. Y. Supp. 149.

In Clark v. Cammann, 160 N. Y. 328, 54 N. E. 710, where, after a life estate in the wife, there was a life estate in a portion in a niece, and then a provision, as to that portion, "to pay over and divide the said principal sum * * * unto and among her children, share and share alike, and to their lawful representatives," the Court of Appeals held that, had the testator stopped after the words "share and share alike," the will would have been the same as in Matter of Brown, 154 N. Y. 313, 48 N. E. 537, and would have held that the legacies vested in the children, both of whom died before their mother—one, however, before the testator's wife, who had the prior life estate in the whole property. The court held that the words "lawful representatives," etc., negatived the claim that the estate vested in the sons; that the testator intended the estate to go to the issue of the sons of his niece; and that as no issue of these sons were in being at the death of the testator, and it was uncertain whether they would ever have issue, the remainder was contingent, for the reason that the persons to whom and the event upon which the estate was limited were uncertain. It was a proper case for the application of the rule that, futurity being annexed to the substance of the gift, the vesting was suspended.

Rudd v. Cornell, 58 App. Div. 207, 68 N. Y. Supp. 757; Id., 171 N. Y. 114, 63 N. E. 823—involved the construction of a will where a trust during the lives of the testator's two youngest children was created with directions to apply one-third of the net income to the use of the wife, and the balance to the use of five named children, with a provision that in case any child should die during the trust term, leaving issue, the issue should get the child's share, but, if none, then to be paid to the survivors. At the termination of that trust, then "to divide my estate and pay one-third thereof to my wife, if she shall then be living, and one share of the residue * * * to each one of my children who shall then be living and to the issue of such of them who shall have died, leaving lawful issue him or her surviving, such issue to take the share of the parent; if one, solely; if more than one, jointly and equally." One of the two youngest died, leaving a wife and daughter. The daughter died during the trust term, leaving her mother sole next of kin and heir at law. It was held that the testator intended that the daughter, as well as each of his children, took only a contingent or defeasible interest or estate in the trust property, which would not vest until the end of the trust period, or, if vested, would be divested by the death of such child, or issue of such child, during the continuance of the trust period. This case is nearest on the facts to the one at bar, and yet it must be apparent from the outline here given that it cannot be invoked as authority. The right of a child to take at the expiration of the trust term is made to depend upon survivorship. The Appellate Division pointed out that there was no present gift, except of income, to children or their issue; that the only words of gift were contained in the direction to divide, no distinction being made in that regard between children and their issue; and that survival to the time of distribution was, under the unmistakable intent of the will, essential to the acquisition of a vested interest. The Court of Appeals, after observing that the will contained no words of gift to the children or grandchildren, either of income or principal, seizes upon the words "shall then be living" as controlling on the question of contingency, and accepts as the obvious scheme of the will that the grandchildren, of whom the daughter was one, should take no greater share than the parent, and at no earlier time than the parent would have taken if living. Finally the Court of Appeals distinctly held that the final division was to be made among the members of a class, and that therefore the benefit of the will must be confined to those who came within the category at the date when the distribution or division was directed to be made. In the case at bar we have a distributive gift over and above the direction to divide among named beneficiaries, with absolutely nothing to indicate that the testator was in any wise concerned with questions of survivorship.

It is unnecessary to distinguish further. To construe this will other than as vesting indefeasible interests in income and principal in the respective beneficiaries would, to my mind, be creating an intent for the testator contrary to that which, it seems to me, he has clearly expressed.

I have deemed it unnecessary to consider the law of the states of New Jersey and Illinois, where some of the testator's real property is situated, for the reason that I find upon investigation that the same construction would obtain there as I have adopted here.

I am therefore of the opinion that the executors of the deceased children of Emily B. Wheeler are entitled to the distributable moneys which have heretofore been paid to their testator and testatrix, respectively. Submit decision accordingly. Costs to be paid out of the estate.

Judgment accordingly.