(51 Misc. Rep. 140.)

## CLARK et al. v. GOODRIDGE et al.

(Supreme Court, Special Term, New York County. June, 1906.)

1. WILLS—CONSTRUCTION.

Where the intent of testatrix is clear, and the disposition of her property is equitable, the court will try to sustain the will unless fixed rules demand its nullification.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 962–964.]

2. SAME—NATURE OF ESTATE.

Testatrix gave to her executors as trustees five specific pieces of property and directed an appraisal thereof, and five years from her death "or at the time of the death of the survivor of my two said grandchildren" the executors should grant and convey to each of her four children one or more pieces of land, with such amount of cash as necessary to make the shares equal, and during such five years, or until the death of the survivor of the two grandchildren, collect the rents and divide the same among her four children equally, per stirpes. The intent of the will was evidently to provide equally for such children and their issue. Held sufficient to vest in each child an estate as of the death of testatrix, and to show an intent that the rents should be paid to such children during the five-year term, and, in the event of the death of a child, the issue to take by substitution.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1468.]

3. SAME—PERPETUITIES.

Where testatrix provided that her executors should hold certain specific property for five years after her death, when it was to be divided among her four children, as such disposition of the estate would contravene the rule against perpetuities, a provision that such division should be made at such time, "or at the death of the survivor of my two grandchildren," was a provision to satisfy the rule of law rather than a specific testamentary provision in favor of the grandchildren and the omission of the words, "whichever event shall first happen," elsewhere employed in the will for a like purpose, will be deemed an unintentional omission, and not as indicating a difference in intent.

4. SAME—PROPERTY DEVISED.

Testatrix devised five specific pieces of real estate to her executors to be divided after five years among her four children; the executor to convey to each of such children one or more of said pieces of land with cash sufficient to equalize the shares of the children. Two of such five pieces were adjoining property, and at the execution of the will there was complete separation of the buildings thereon, but subsequent alteration changed their independent character. Held to show that testatrix had more than four pieces of real estate in mind, and that she regarded such adjoining premises as two pieces.

**5. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION.**

Testatrix directed her executors and trustees to transfer the residue of her estate to a trust company to receive the rents, and to apply the same to the use of her children during their natural lives; and, on the death of each of the children, to convey the share held in trust to the lawful issue of such child, or, if no issue be then living, to convey the same to the others of the children then living, or their lawful issue. *Held*, that the validity of the trust so created was not affected, though, by a codicil, the transfer of the residuary estate to the trust company was postponed for five years, during which period the executors were made trustees, with all the powers given to the trustees anywhere in the will.

**6. WILLS—NATURE OF ESTATE.**

Testatrix devised to a daughter her summer residence, and certain nonresidential property for 20 years, to be kept as "a place of residence for herself and my son." She also devised her city residence and certain property in the city which had been leased for business purposes, to be kept as "a place of residence for herself and my son." Her executors, in case the daughter and son did not wish to occupy such premises, were authorized to lease the same, and, after respective periods of 5 and 20 years, or on the death of the survivor of the grandchildren, whichever event should first happen, the fee of the said properties was given to the four children of testatrix and their issue, and the daughter authorized to rent the property adjoining the summer residence and receive the net income. *Held*, that the devise of the nonresidential property, though mingled with two other properties, stood separate and independent, and as to such property there was an absolute devise for a term of years, and the provision that the property should be kept as a place of residence did not create a conditional limitation so far as the residences were concerned nor cut down the estate therein on an abandonment for residential purposes.

**7. SAME.**

Testatrix devised to her daughter her summer and city residences to be used for residential purposes, and after a certain period to be divided among her children, and directed her trustees to pay such daughter during the first five years $30,000 annually to maintain the residence, out of which she was to pay repairs and insurance, and after five years the allowance was to be reduced to $18.000. *Held*, that the residential properties having lost that character, it would be inconsistent with the testamentary purpose to insist on such annual payments.

**8. SAME—INCUMBRANCES ON PROPERTY DEVISED—PAYMENT.**

Where testatrix devised to two daughters certain premises subject to mortgages and thereafter conveyed the same to them subject to incumbrances, and directed by a codicil that the premises should belong to the daughters free from any mortgages, and directed payment thereof from the personal estate, the mortgages must be discharged from the general estate.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2149.]

**9. SAME—CONSTRUCTION — DESCRIPTION OF PROPERTY DEVISED — PAROL EVIDENCE.**

Parol evidence is admissible to show a devise of property by a street number was intended to include a contiguous lot not comprehended in it, but which had been inclosed with it, and was necessary for the occupation of the premises for the purpose for which they were devoted.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1047.]

Action by William Irving Clark and Caroline L. Iselin, executors of Charlotte M. Goodridge, against Frederic G. Goodridge and others to construe a will. Decree rendered.

John Mason Knox, for plaintiffs' executors.

Gans & Iselin (H. S. Gans and J. H. Iselin, of counsel), for plaintiff Iselin, individually.

Marshall, Moran & Williams (Charles C. Marshall and Stephen G. Williams, of counsel), for defendant Carnochan, individually, and as administrator.

Lucius H. Beers, guardian for all infant defendants Iselin, Wyeth, and Goodridge.

James C. King, guardian for infant defendants Carnochan.

Stickney, Maclay & McBurney (Albert Stickney, of counsel), for defendants F. G. Goodridge and C. G. Wyeth.

Emmet & Robinson, for New York Life Insurance & Trust Company.

LEVENTRITT, J.   This is an action for the construction of a will. The instrument is long and complicated.   A many-sided attack is made on most of its essential provisions, and there is some plausibility to each ground of attack.   At the same time the underlying scheme of the will is so clear, the distribution of bounty so equitable, and the intent in the main so readily deducible, that the effort of the court should be to sustain the will, unless fixed rules of law demand its nullification as a testamentary disposition.   The primary purpose of the testatrix was to provide equally for her four children and their offspring.   Each child receives a residence; each is to receive a specified equal share of realty and personalty at the end of the five-year period.   Each has a life estate in a quarter of the residue, with remainder to the issue per stirpes. This is the general scheme of the will which the testatrix sought to effectuate.   Many questions are raised by the various interests.   Not all of them press for present determination.   Some involve contingencies that may or may not happen, and those portions of the will embracing them need be referred to only as bearing on the general question of intent.   Matter of Mount, 185 N. Y. 162, 77 N. E. 999.

The primary questions to be considered are the two trusts.   The first trust is declared by paragraph seventh of the will, which reads as follows:

"I give to my executors and trustees hereinafter named those certain parcels of land and buildings in the city of New York known as 66 White street, 385 and 387 Broadway, 465 and 467 Broome street and 44 East Seventy-Ninth street, and direct that they shall have the same appraised, and five years after my death or at the time of the death of the survivor of my two said grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth, they shall grant and convey to each of my said four children one or more of said pieces of land with such amount of cash out of my personal estate. as shall make the share to be received by each of my said children equivalent in value to the share of each of the others, and during said five years or until the death of the survivor of my two said grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth, I direct my said executors and trustees to collect the rents, issues and profits arising from said properties, and, after paying the taxes, assessments and necessary expenses for the maintenance of the same, to divide the· same amongst my said four children equally, per stirpes."

The serious criticism here is that the trust is not necessarily measured by. lives, but is limited upon an absolute term of five years.   Both

grandchildren might die within the term, and if there is discretion in the trustees to continue the trust it is necessarily void.

If we consider the first part of the seventh clause alone, there is some merit to the criticism; but reading the will as a whole, and referring to other clauses, I think we may be exigetic to the extent of having the clause read:

"And five years after my death or at the time of the death of the survivor of my two said grandchildren * * * whichever event shall first happen."

In the fourth clause of the will, which we shall have occasion to construe more in detail hereafter, the testatrix in giving one of her daughters a country seat for 20 years, carefully qualified it by the clause:

"Provided, however, that such possession shall not in any event continue after the death of the survivor of my grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth."

And, again, in the same clause, in devising No. 250 Fifth avenue as a place of residence for a period of five years, there is precisely the same qualification. Similarly, in the fifth clause of the will, there is a devise to the executors "at the expiration of said respective periods of five and twenty years or upon the death of the survivor of my said grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth, whichever event shall first happen."

In the fifteenth clause the testatrix directs that if, "during the lives of my said two grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth, and the survivor of them, all of my children shall attain the age of 50 years," then certain trusts are to cease.

Wherever it has been necessary to measure a term by lives, the testatrix has selected those of the grandchildren named. They are not the immediate beneficiaries of the terms or trusts so measured. The general intent of the testatrix seems clear. She desired to make a certain disposition of her estate, or of portions of it, at the end of a stated period of years. Such a disposition would contravene the rule against perpetuities; therefore, lives are arbitrarily selected, according to which to measure the periods. The same lives are selected in each instance; the intent being rather to satisfy a rule of law than to indicate a specific testamentary provision in favor of the grandchildren. The omission, therefore, of the words "whichever event shall first happen" or some equivalent, in the seventh clause, is to be taken as an unintentional oversight, and not as indicating a difference of intent. The will, of course, is to be read as a whole, and from that it would appear that the sole purpose of drawing the grandchildren into this clause was, as elsewhere, to limit the estate of the executors upon their lives. Roe v. Vingut, 117 N. Y. 212, 22 N. E. 933; Matter of Murray, 75 App. Div. 246, 78 N. Y. Supp. 165. So far as the remainders under this clause are concerned, I am of the opinion that futurity is not annexed to the substance of the gift, and that they are vested. While it is true that the only gift is in the direction to grant and pay over at a future time, a circumstance very frequently seized upon to declare a gift contingent (Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709),

that circumstance is not necessarily controlling. It is a rule of interpretation which must yield to the more fundamental canon of intent.

Reading the seventh clause in connection with the twelfth, which provides that "so much and such part of my estate as I have given in trust, I direct my executors and trustees to divide into as many parts as there may be living beneficiaries to take care of their respective shares," the purpose becomes plain. The executors are directed to appraise the property at once, not to wait the lapse of five years. This requires, especially in view of the twelfth clause, an immediate equalization of the shares by the addition of cash. Each share is then held in trust for a specific named beneficiary, a child of the testatrix, and each such child is entitled to an equal share of the rents and profits, or, in the case of its death, that share is to go per stirpes. Not only is the statutory definition of vesting satisfied (1 Rev. St. [1st Ed.] p. 723, part 2, c. 1, tit. 2, § 13; Moore v. Littel, 41 N. Y. 80), but I believe construction is not being stretched in saying that the amount of the gift is practically severed from the estate, and with a provision that the interest thereon be paid to the beneficiary until the time of distribution. This constitutes a present gift. Warner v. Durant, 76 N. Y. 133; Steinway v. Steinway, 163 N. Y. 183, 57 N. E. 312; Dougherty v. Thompson, 167 N. Y. 472, 60 N. E. 760; Ogden v. Ogden, 40 Misc. Rep. 473, 82 N. Y. Supp. 710. The estate in the trustees is only so large as is necessary to satisfy the trust. Beyond that they have a power for the purposes of distribution, but the existence of such a power does not prevent vesting. Matter of Brown, 154 N. Y. 313, 48 N. E. 537. I do not think it was the intention of the testatrix that in the event of the death of one of her children during the five-year period, that share was to be divested in favor of anybody but his or her own issue. The provision as to rents clearly shows that. In my opinion this clause should be construed to vest in each child an estate as of the death of the testatrix, that the rents, issues and profits were to be paid to such child during the five-year term, and that in the event of the death of a child, issue were to take by substitution.

Two further points under the seventh clause call for brief mention:

(a) It is claimed that the two Broadway properties are to be treated as a single piece of real estate. I take it otherwise. When the buildings were originally erected plans were filed for separate buildings. Leases made by the testatrix are of portions of the separate buildings. Certain alterations were made in 1900, which to an extent only changed their independent character. But the will was made in 1899, and that is the controlling date in determining how many parcels the testatrix had in mind. Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332. Prior to 1899 there seems to have been a complete separation of the two buildings. The fact that the cornice came to a peak over the division wall is unimportant. Architectural unity is consistent with physical separation. Besides, the testatrix directs that there shall be set apart "to each of my four children one or more of said pieces of land." She intended each child to have at

least one piece of land. The use of the words "or more" indicate that she had more than four pieces in mind; in other words, that she regarded the Broadway buildings as two pieces.

(b) The property No. 44 West Seventy-Ninth street is also embraced in the devise. Shortly before her death the testatrix made a contract for the sale of this property, which contract was thereafter carried out by her executors. I think it clear that this property passed to the executors and trustees subject to the trust, and that upon the consummation of the sale the proceeds were substituted in place of the realty. 3 Birdseye, Rev. St. p. 4020. There were thus five pieces of realty which the executors and trustees had to deal with as of the date of the testatrix's death to bring about the equalization called for in the fourth clause.

2. So much for the preliminary trust. Now as to the residuary trust. That is created by the eleventh clause of the will and the fourth clause of the codicil, executed on the same day as the will itself. The eleventh clause reads:

"I direct my executors and trustees to transfer all the rest, residue and remainder of my estate, real and personal, to the New York Life Insurance & Trust Company of the city of New York in trust to receive the rents, issues and profits thereof and to apply the same to the use of my said children during their respective natural lives, one share being held in trust for each child, and upon the death of each of my children, to grant and convey the share held in trust for the one so dying to the lawful issue of the said child so dying per stirpes: or if no such issue be then living, to grant and convey the same to the other or others of my said children then living and the lawful issue then living of any children who may have died, per stirpes."

The fourth clause of the codicil reads:

"I direct that my executors, W. Irving Clark and Caroline Lydia Iselin, shall not transfer the rest and residue of my real and personal property as provided for in the eleventh clause of my will, to the New York Life Insurance & Trust Company until five years after my decease, and during said five years I make them trustees for said rest and residue with all the powers and duties imposed and given to my trustees anywhere in my will, and direct them out of my personal estate to pay off the said mortgages as provided by the first clause of this codicil, and until said mortgages are paid and satisfied to pay the interest thereon."

Standing alone, the eleventh clause creates a perfectly valid trust. By the codicil the transfer of the residuary estate to the trust company as trustee is postponed for five years, but the trust in the individual share of each child remains limited by a single life, and during this five-year period the executors are made trustees, with all the powers and duties imposed and given to the trustees anywhere in the will. In other words, we have a provision, perhaps somewhat unusual, for successive trustees, but by no means illegal. By the twelfth clause any estate given in trust is directed to be divided into as many shares as there are living beneficiaries, so that there would seem to be no question, irrespective of the provision of the eleventh clause of the will, as to "one share being held in trust for each child," that there is no undue suspension, but simply a change in the person of the trustee for the first five years. It is claimed that certain other clauses of the will invalidate the residuary trust. Without quoting

the provisions, it may be said that the requirements of the fifteenth clause may possibly shorten the residuary trusts if the youngest surviving child of the testatrix becomes 50 years of age during the lives of either of the two grandchildren; but, in view of the separation of the trusts, it is difficult to see how the trusts are extended by the fifteenth clause. So far as the nineteenth and twentieth clauses are concerned, they do not present questions for present determination. They do not affect the validity of the trusts, even if they are invalid in themselves.

3. The provisions in favor of Mrs. Iselin require consideration. After devising in the second clause to one daughter a life estate in a piece of residence property, and in the third a similar life estate in another piece to a second daughter, provision is made in the fourth clause for the remaining daughter, who resided with the testatrix during her lifetime. This clause reads:

"I devise to my daughter, Caroline Lydia Iselin, my real estate at Riverdale, New York, known as 'Springhurst,' with the furniture thereof, and also that portion of land adjacent thereto bordering on Riverdale avenue and Riverdale lane, with the buildings thereon, known as 'The Chestnuts,' for and during twenty years from the date of my death (provided, however, that such possession shall not in any event continue after the death of the survivor of my grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth), to be kept by her as a place of residence for herself and my son, Frederick Grosvenor Goodridge, and I also devise to my said daughter my real estate in the City of New York, known as Number 250 Fifth avenue, with the furniture thereof, and No. 2 West Twenty-Ninth street, for and during five years from and after the date of my death; provided, however, that such possession shall not in any event continue after the death of the survivor of my said grandchildren Gouverneur M. Carnochan and Charlotte G. Wyeth, to be kept by her as a place of residence for herself and my said son, Frederic Grosvenor Goodridge; and I direct my executors and trustees to pay to my said daughter, Caroline Lydia Iselin, the sum of thirty thousand (30,000) dollars a year for maintaining 'Springhurst' and No. 250 Fifth avenue during the first five years after my death, out of which she shall pay the expenses for keeping the same in repair and insured (I direct that the taxes and assessments on both properties be paid out of my estate at large). I also direct that after the said five years, the allowance made to maintain 'Springhurst' shall be reduced to eighteen thousand (18,000) dollars per annum. These amounts shall be given to said Caroline Lydia Iselin without impeachment of waste, nor shall she be required to give any accounts for such allowance to any of the heirs or to my executors and trustees. My said daughter to have in addition to said sums whatever income after paying taxes, insurance and other necessary expenses may be received from No. 2 West Twenty-Ninth street, and I authorize my said daughter to rent said premises upon such terms as she may think best, but not for a longer period than five years after my death."

The fifth clause and part of the twenty-first should be read in connection with this.

The fifth reads:

"I give and devise to my executors and trustees hereinafter named, in case the said Caroline Lydia Iselin and Frederic Grosvenor Goodridge do not wish to keep the said premises or either of them, the power and authority to lease the same or any part thereof for such term or terms and upon such conditions as to my said executors and trustees may seem desirable, and at the expiration of said respective periods of five and twenty years or upon the death of the survivor of my said grandchildren, Gouverneur M. Carnochan and Charlotte G. Wyeth, whichever event shall first happen, I give the fee of the said properties to my four children and their issue, per stirpes."

The material part of the twenty-first reads:

"I authorize and empower my said daughter, Caroline Lydia Iselin, to rent the place known as 'The Chestnuts' at Riverdale and the net income thereof to be received by her in addition to whatever sums may be heretofore given to her."

It will be observed that the fourth clause embraces four properties. "Springhurst" was the testatrix's summer seat, while No. 250 Fifth avenue was her city residence. Mrs. Iselin and Dr. Goodridge, who was unmarried at the date of the testatrix's death, made their home with her. Neither of the other two pieces, that is to say, "The Chestnuts," which adjoined "Springhurst," nor No. 2. West Twenty-Ninth street, was residential property. "The Chestnuts" consisted of about 10 acres of land, with a large building of about 50 rooms that had been used as a school or boarding house for many years before Mrs. Goodridge's death; and No. 2 West Twenty-Ninth street had been leased for business purposes since about the year 1887. Shortly after the death of the testatrix Mrs. Iselin ceased to occupy "Springhurst" or the Fifth avenue house as places of residence.

It is now claimed that her estate in these properties was conditional and was defeated by her abandonment of them for residential purposes. I cannot subscribe to this view. So far as "The Chestnuts" and No. 2 West Twenty-Ninth street are concerned, there is an absolute devise for a term of years, without words that can be construed either as explanatory or creating a condition subsequent. Although mingled in the formal devise with the two other properties, yet in law they stand as separate as if made the subject of independent clauses. They could not be kept as places of residence to the knowledge of the testatrix, because neither was adapted for that purpose. The inclusion of the properties in one may perhaps be explained because they were adjoining properties, and because the testatrix decided to include them conveniently in a devise over provided for in the fifth clause. Whatever may have been the purpose, there is nothing in the fourth clause in anywise limiting the absolute devise of the respective terms. Nor do I think that the words "to be kept by her as a place of residence for herself and my son" create a conditional limitation either precedent or subsequent so far as No. 250 Fifth avenue and "Springhurst" are concerned. The testatrix's obvious purpose was to provide a place of residence for the two children who were not yet so provided, but I do not think that the absolute formal devise to Mrs. Iselin was cut down or rendered defeasible by the use of words which are not the usual, formal words appropriate to the creation of a condition and which are explanatory or expressive of a purpose of the testatrix rather than limitational. The testatrix uses the same form of devise as in the second and third clauses, where she gives life estates in less valuable property to her other daughters. In each of these clauses she refers to the fact, by way of explanation, that the daughter "now resides" thereon. She wished to provide a residence for her son and daughter, and, therefore, in the fourth clause indicates the town and country houses as for purposes of residence. It is rather an expression of equality of bounty,

perhaps a precatory expression, but hardly equivalent to words of defeasance. I take it as an important point that there is no devise to Dr. Goodridge, the devise is to Mrs. Iselin, with an expression of purpose that the property be kept "by her as a place of residence for herself and my said son." The property in which terms of years are devised to Mrs. Iselin are far more valuable, as appears from the appraisals in evidence, than those given for life to the other daughters, and the lesser term to Mrs. Iselin is partially thereby explained.

Conditional estates are, of course, in derogation of vested rights, and courts should not be astute to read a condition into a devise unless necessary to carry out the clearly expressed intent of the testatrix. The words hardly rise to the dignity of words of possible defeasance. There is no devise over; there are no words of forfeiture. There is not the precision in the use of the words themselves which would enable the court to say that they meant only one thing. On the contrary, the very mingling of the four properties, and the reference to them generally of the words "to be kept as a residence" when they could only relate to the properties that were in fact residential, would indicate that there was not a very great clarity in the testatrix's mind as to the use of the term beyond that she wished to indicate a home to two children who had not yet been provided for in that regard. I do not think I should be justified, especially in view of the unsatisfactory and conflicting state of the authorities (1 Underhill, Wills, § 515, and cases cited), in holding that the absolute devise was cut down. In other jurisdictions very similar language has been construed as not limiting the alienability of an estate despite the abandonment of the use indicated in the will. McCalla's Estate (1901) 16 Pa. Super. Ct. 202; Talbott v. Hamill (1899) 151 Mo. 292, 52 S. W. 203. I have examined the cases cited by one of the guardians, and it may suffice to say, in view of the many questions that must necessarily be referred to in this opinion, that I find them all distinguishable. Either the language is more precise, the intent more clear, or there is a provision for forfeiture or a devise over. But while I am of the opinion that Mrs. Iselin has an indefeasible estate for years in the several properties, I do not think that the respective allowances of $30,000 and $18,000 should be treated as annuities. They are given for a specific purpose; and, in dealing with them the testatrix separates the otherwise commingled properties of the fourth clause. They are given for maintaining simply the residence properties, and these having lost that character, it would be inequitable, as well as inconsistent with testamentary purpose, to insist on their payment. The provisions for renting in the fourth, fifth, and twenty-first clauses are perhaps slightly confusing. But they need not affect the general result. The powers granted to Mrs. Iselin may be treated as merely additional, while that given to the executors, if valid, is not inconsistent with her right to the rents. Durfee v. Pomeroy, 154 N. Y. 594, 595, 49 N. E. 132.

So far as the gift of the fee is concerned, I am of the opinion that, despite the ingenious and forcible argument of one of the guardians, it embraces the four properties. Four properties are referred to in

the fourth clause, and when the testatrix in the fifth uses the words "said properties" the ordinary meaning of language requires that they be referred to the four parcels. The gift of the fee in the fifth clause is independent of the power to lease given the executors. The power to lease relates to "premises"; the gift of the fee to the "properties." If the testatrix had used the same word in both parts of the clause there might be more force to the contention, although even then the grouping of the residence and nonresidence properties in the fourth clause seems to indicate a desire to keep the four pieces together for the very purpose of the grant of the fee in the fifth clause. Had the testatrix intended to limit the grant of the fee to two of the four parcels she would have indicated her intention by specific words rather than leave the exclusion of two valuable pieces to inference and analysis.

There remains to be considered what was included in the devise of the real estate known as No. 250 Fifth avenue. Extrinsic evidence is admissible to show what property was "known as" No. 250 Fifth avenue. There is a latent ambiguity here, the explanation of which may be made by parol evidence. The testimony of Mrs. Iselin, Dr. Goodridge, and Mrs. Wyeth should be stricken out. That of the other witnesses may remain. Mr. Iselin is not barred from testifying because he may hereafter have an estate of curtesy. He has no interest in the legal sense. Matter of Clark, 40 Hun, 233; Bowen v. Sweeney, 66 Hun, 42, 20 N. Y. Supp. 733, 734; Hobart v. Hobart, 62 N. Y. 80. On the record as it thus stands, I am of the opinion that the stable lot in the rear, and which seems to have had the No. 1 West Twenty-Eighth street, was included in the devise of No. 250 Fifth avenue. During the testatrix's lifetime the two had been used together as the component parts of a city mansion. The extension of the house covered part of the stable lot. It seems that both lots were inclosed as one property. There is testimony that the testatrix spoke of the stables in connection with No. 250 Fifth avenue, but never apart from it or as a separate property; that she spoke to the "coachman about taking the horses to 250 for the winter;" that, referring to a leak in the stable, she inquired whether the "leak at 250 had been repaired." After considering the whole testimony, I am satisfied that the two pieces were used and treated as one in her lifetime, and that she meant them to pass as one in her will. The fact that she did not give Mrs. Iselin all her horses and carriages, but directed them to be divided equally, does not militate against the construction adopted. Whether the stable was to have several horses or many, it was still an integral part of the town house and dedicated to a use similar to that during the testatrix's lifetime.

A question is also raised as to the payment of the mortgages. By the second and third clauses of the will, the residential properties were devised to Mrs. Carnochan and Mrs. Wyeth, "subject nevertheless to any mortgages thereon existing at my death." Prior to her death, the testatrix conveyed these properties to her daughters subject to the mortgages. By the first clause of the codicil, there is a direction that the two properties shall belong to the daughters

"free of any mortgages," and by the fourth clause of the codicil there is a specific direction to pay off these mortgages out of the personal estate. This state of facts requires a construction that calls upon the executors to discharge the mortgages out of the general estate. De Graaf v. Cochrane, 21 App. Div. 381, 47 N. Y. Supp. 502; Sutherland v. Gesner, 27 Hun, 282; Real Prop. Law, Laws 1896, p. 594, c. 547, § 215.

Other questions are raised by the will, but they are either academic at this time or their solution flows from the conclusions already stated.