CHARLES H. WARNER, Administrator, etc., Respondent, v. CHARLES W. DURANT, Executor, etc., Appellant

Where, by the terms of a bequest, the gift is to be severed instanter from the general estate, and to be held by trustees for a specified time for the benefit of the legatee, and then to be paid over to him, and, in the meantime, the interest thereof to be paid to him, this is indicative of the intent of the testator that the legatee shall, at all events, have the principal, and is to wait only for the payment until the day fixed.

The will of D., after various devises and bequests, gave to his executors $275,000 of moneys belonging to him, then invested in bonds and mortgages, in trust, to hold and keep invested, and, among other things, to pay annually to B. seven per cent interest on $15,000, and, at the end of five years from the testator's decease, to pay the principal to said B. B. died before the expiration of the five years. In an action to obtain a construction of the will, held, that the legacy vested in B immediately upon the death of the testator, and passed to his personal representatives; also held, that this construction was not affected by the fact that the principal might not have yielded interest at the rate named, as all the interest that was derived therefrom was to be paid, and both the legacy and the interest thereon were connected as gifts to the legatee

(Argued January 16, 1879; decided January 28, 1879 )

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 15 Hun, 450.)

The question submitted was as to whether, under the will of Clark Durant, defendant's testator, who died in February, 1873, a legacy vested in Oliver Blush, plaintiff's intestate, upon the death of said testator.

The clause of the will in question is as follows :

" Thirtieth. I give, devise and bequeath to my said exec-utors, their heirs and assigns, in trust, two hundred and seventy-five thousand dollars of the moneys belonging to me, and now invested in bond and mortgage, on real estate, in the city, county and State of New York, to have and to hold the same as now invested, during the continuance of this trust, and whenever any of the principal sums composing this trust shall be paid, to reinvest the said principal sums in first mortgage railroad bonds that are regularly called at the regular board of stock brokers in the city of New York, and during the continuance of this trust, and each and every year thereof, to pay annually seven per cent interest upon fifty thousand dollars to my nephew, Charles W. Durant, of the city, county and State of New York ; and upon forty thousand dollars to my nephew, William F. Durant, of the city of Chicago and State of Illinois ; and upon fifteen thousand dollars to my nephew, William C. Durant ; and upon fifteen thousand dollars to Oliver Blush ; and upon fifteen thousand dollars to my nephew, William D. Blush ; and upon fifteen thousand dollars to Julia, wife of J. S. Hurlburt, of Springfield, Massachusetts ; and upon fifteen thousand dollars to Martha N. Sampson, daughter of my deceased niece, Julia Sampson ; and upon fifteen thousand dollars to Mary H. Sampson, daughter of my deceased niece, Julia Sampson ; and upon forty thousand dollars to my nephew, Thomas C. Durant ; and upon five thousand dol-lars to Ira B. Sampson, son of my deceased niece, Julia Sampson ; and upon five thousand dollars to Henry Samp-

son, son of said deceased niece, Julia Sampson; and upon ten thousand dollars to Thomas F. Durant, son of C. W. Durant, of the city, county and State of New York; and ten thousand dollars to C. W. Durant, Jr., son of said C. W. Durant; and upon ten thousand dollars to F. C. Durant, son of C. W. Durant; and upon ten thousand dollars to Howard M. Durant, son of C. W. Durant; and upon five thousand dollars to Estella, a daughter of said C. W. Durant; said payment of interest to commence in the month of January next ensuing after my decease, and at the expiration of five years from my decease, to pay over the principal sums upon which the interest hereinbefore has been directed to be paid to the respective parties to whom said interest money is directed to be paid. All the rest and residue of my real and personal estate, choses in action, and property of any and all kinds, and wheresoever situate, and of whatever name or nature, I give, devise and bequeath to my nephews, Charles W. Durant, William F. Durant, William C. Durant, their heirs and assigns, to be equally divided between them, share and share alike, and to that end and purpose my executors are authorized, empowered and directed, to sell and dispose of all my real and personal estate not hereinbefore specifically devised or bequeathed, and convert the same into money as soon after my decease as it can reasonably and judiciously be done. And as often after the payment of all the specific legacies and bequests, hereinbefore made, as the sum of twenty thousand dollars shall accumulate in the hands of my said executors, they shall divide the same among my said residuary devisees and legatees."

The said Oliver Blush died February 12, 1877.

Further facts appear in the opinion.

*Carlisle Norwood, Jr.*, for appellants. The clause of the will suspending the absolute ownership of the fund including all the legacies for five years was void. (3 R. S. [Bank's 5th ed.], 75.) The period of suspension of absolute ownership cannot be measured by time alone, life must in some form be

the measure of it. (*Moore* v. *Moore*, 47 Barb., 260; *Hones* v. *Van Schaick*, 20 Wend., 565; *Harris* v. *Clark*, 7 N. Y., 242; *Taloe* v. *Gould*, 10 Barb., 395; *King* v. *Rundle*, 15 id., 145.) The legacy to Oliver Blush did not vest in him instanter on the testator's death. (*Colton* v. *Fox*, 67 N. Y., 348, 353; 1 Roper on Legacies, 557, 577; *Watson* v. *Hayes*, 5 Myl. & Cr., 145; *Balsford* v. *Kerbell*, 3 Ves. Jr., 363.) The intention that the legacy should not vest for five years is apparent from the fact of the testator giving the legatee the specific legacy of seven per cent per annum on $15,000. (1 Roper on Legacies, 581; *Cromek* v. *Lumb*, 3 Yonge & Coll., 565; *Balsford* v. *Kerbell*, 3 Ves., 363, *ante;* 3 Williams on Exr., 1388 [Perk. ed.]; *Watson* v. *Craig*, 5 Myl. & Cr., 145, *ante*.)

*J. L. Hill*, for respondent.

FOLGER, J. This case presents the question, whether a legacy became vested in the legatee in his life-time, though he died before the time fixed for the payment.

It is a general principle, that where the gift is absolute, and the time of payment only, postponed ; time, not being of the substance of the gift, but relating only to the payment, does not suspend the gift, but merely defers the payment.

This principle will not act in this case to vest the legacy ; for the gift was not, in the outset, to the legatee; and another rule is to be noticed. It is this : Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. Here the gift was at first to executors, to hold in trust for five years ; and at the expiration of that period, to pay over to the legatee. But this rule does not act in this case ; for there has been a distinction grafted upon it. It is this : Where the gift is to be severed *instanter* from the general estate, for the benefit of the legatee ; and in the meantime, the interest thereof is to

be paid to him; that is indicative of the intent of the testator that the legatee shall, at all events have the principal, and is to wait, only for the payment, until the day fixed. We may treat the will as though there were in the thirtieth clause of it but one bequest, that to Oliver Blush. Though that legacy is provided for, in connection with many others, it does not depend upon them, nor is it affected by them. It is named with them, in the same clause, to save from prolixity, inasmuch as the same form of words would do for all. The taking of the fund needful for all the bequests out of the residue of the estate, is the taking out also the fund needed for each of them. So treating it, it is as if the testator had directed that $15,000 worth of his personal property, invested in a specified manner, be held in trust by his executors for five years, and at the end of five years, be paid to Oliver Blush. The gift, though made to the executors in the first instance, is at once severed from the bulk of the estate, and made a distinct fund. But there is, as far as we have gone, no gift to Oliver, save in the direction to pay, at the end of a given time. The will however continues, and directs that there be paid annually to the legatee seven per cent interest upon the $15,000. Thus it appears that the property given is severed at once from the general estate, for the benefit of the legatee. The interest upon it is to be paid to him, for the time it continues to be held in trust. Such seems to us the meaning of the testator, and that the indication therefrom is that the legacy should vest at once, and the time of payment alone be postponed. It is urged that the interest to be paid is not necessarily that, and that alone, which shall be had from the $15,000. The reason given for this claim is, that it could not have been certain, when the testator made his will, that that sum, invested according to his direction, would always yield interest at *seven per centum per annum*, the rate named by him; and that if it did not, that then what it lacked in yielding, at that rate, would need to be made up from the *residuum* of the estate. It is then urged, that as this would be paying the

interest from other property of the estate, and not from the legacy alone, it would not bring this case within the distinction above noted.   It has been held, that if the intermediate gift of interest is not co-extensive with the whole amount of the interest on the legacy provided for, or is made out of another fund, the legacy will not vest, before the day fixed for payment of the legacy itself.   (*Watson* v. *Hayes*, 5 Myl. & Cr., 125; *Batsford* v. *Kebbell*, 3 Ves. Jr., 363.) But if it be granted that it has turned out, or might have turned out, that interest at the named rate was not yielded by the securities in which the money given was invested; yet was not all that they did yield given to the legatee ?   Is not that a gift of the whole interest received from the legacy ? So much of the seven per cent as was yielded by those securities was not to be got from another fund; and if any part of it was, it did not alter the fact that all of the interest that was derived from them was to be paid to the legatee, and to be paid to him as the interest from or upon his legacy. But aside from that view; the direction is to pay to the legatee seven per cent interest on the amount of the legacy. Wherever the money was to come from with which to make the payment, the sum which was to be paid as interest, was one to be made at that rate of interest on the principal sum bequeathed.   And it is that same principal sum, on which an amount of interest at that rate was to be paid, which was to to be paid over at the end of five years.   Thus the legacy and the interest on the legacy, were connected in the will, as gifts to the legatee.   It was the income which the legacy was capable, at the legal rate, of yielding ; a sum which the use of money to that amount was yearly worth, that was to be paid yearly to the legatee.   It was to be paid as and for the interest on the amount of the legacy.   Even if the payment directed is not called interest, but the sum to be paid is precisely what the interest on the amount of the legacy would be, and such payment is to cease when the principal of it is paid, it is, in effect, so as to bring the above mentioned distinction into operation, substantially the same as if it was named in the

will as strictly the interest on the legacy : (*Fuller* v. *Winthrop*, 2 Allen, 51.)   The distinction is based, not upon the fact that the income which the particular legacy really yields is directed in the *interim* to be paid to the legatee, but on the fact that an amount equal to all which it is capable of yielding, or may be expected, in the use of legal methods, to yield, is thus given ; *In re Hart's Trust*, 2 De Gex & Jones, 195. It is the giving, *ad interim*, directly and at once to the legatee, of the whole yearly profit of the legacy, which indicates the purpose to be to vest the legacy at once.   Moreover, we are of the opinion that the testator meant to give to the legatee the interest which for the five years was derived from that specific $15,000.   It is an interpretation of the will, which we cannot adopt, that finds an intention that interest shall be paid yearly at the rate named, whether or no the specific property set aside does yield income at that rate. The $15,000 is to be got from a kind of property which we may assume yielded interest at that rate, at the time when the will was executed.   The executors were directed to hold that property as it then was, for the five years of their trust ; though there was a further direction, that if any of the investment fell in, another kind of security should be obtained. That kind was not one necessarily yielding a lower rate of interest.   We see no indication in the will that the testator had in his mind that any portion of his estate, other than this specific property, would be called upon to keep up the interest upon the amount of this legacy at the rate named. In whatever view the will is placed, there is indicated the purpose that Oliver Blush, the legatee, shall have a yearly sum, to be measured by the amount of income which the legacy given to him will yield, at interest at seven *per centum per annum*.   He is to have the immediate benefit of the profit which that sum is likely to yield each year ; and is to have it continuously, yearly, until the time fixed for payment arrives.   So also, all the probabilities existing when the will was made were, that the principal sum given would of itself, unaided, yield the annual amount thus to be paid,

and yield it in the particular shape named ; that is, in interest.   There was then a gift, though to executors in the first instance, of specified property at once to be severed from the bulk of the testator's estate for the benefit of the legatee, to be paid to him at the end of five years ; and, in the meantime, the interest thereon to be paid to him.   The intent of the testator, thus indicated, was, that the legacy should vest in Oliver Blush at once.

The appellant puts some reliance upon other clauses of the will, as indicating an intention different from that which we have deduced.   Thus the testator made to Oliver Blush a bequest of $10,000, to be paid to him within one year after the testator's death.   He also devised to him valuable real estate, with the appurtenances and fixtures, to be enjoyed by him at once.   It is argued from this, that if the testator had meant that Oliver Blush should have a vested interest in the $15,000 legacy, he would not have deferred the payment of it for five years, and given it in trust for the meantime, but would have given it to Oliver at once.   This difference in the terms of the two bequests and the devise is not in itself conclusive.   It might have been caused by a consideration of other circumstances.   This legacy was to be got from a specified kind of securities ; and it may be that the testator did not want them called in at once.   But there is a more convincing circumstance than that.   The same thirtieth clause contains bequests, in large sums, to three legatees, who are also named as the residuary legatees of the testator.   If the legacy to Oliver Blush was not vested at once, then the legacies to those three were not.   But if the legacy to Oliver Blush was not vested, in some way, what became of it on his death ?   It fell into the *residuum* of the estate, and went to those three residuary legatees.   But the legacies to them, in the thirtieth clause, are given in the the same terms as that to Oliver.   If then they had died before the end of the five years, the legacies to them were not vested, if that to him was not.   These legacies too, on their death, would have fallen into the *residuum*, and with

what result?   To go, with the *residuum*, to the representatives of the three in whom they had not vested. It is not to be supposed that the testator, if he had the forecast to so frame his bequests as that these legacies should not vest, would have carelessly defeated his own purpose, by the residuary clause of his will.

We are of the opinion that the legacy to Oliver Blush vested; and that the judgment should be affirmed.

All concur.

Judgment affirmed.