(Surrogate's Court, Westchester County.   December, 1894.)

1. LIFE TENANTS—IMPROVEMENTS—RIGHT TO COMPENSATION.
A life tenant who puts improvements on the premises cannot claim compensation therefor from the reversioner or remainderman.

2. EXECUTORS AND ADMINISTRATORS—LIABILITY FOR WASTE BY COEXECUTOR.
An executor is not chargeable with waste committed by his coexecutor, unless he contributed thereto, or might have prevented it by the exercise of due vigilance.

Judicial settlement of the accounts of Joseph Lamb as administrator of Peter Rennie, deceased.

John Henry Hull, for administrator.
J. C. O'Conor, for contestant Rennie.
Root & Clarke, for contestant Agnes Leech.

COFFIN, S.   Serious irregularities seem to have accompanied the proceedings in regard to this estate.   In the first place, the executor caused only the executrix, the life tenant, to be cited on his accounting in 1879, in which he claimed and was allowed a credit of $992.56, as the cost of the addition or bay window.   All interested parties should have been cited, and thus had an opportunity of objecting to it.   The allowance of it affected all the subsequent accountings, down to and including the present one, where it is, for the first time, questioned.   Neither Robert Rennie, brother and next of kin of deceased, now dead, nor his personal representatives, nor the Drew children, or their personal representatives, were cited on any of the accountings preceding this.   The Drew children all died anterior to the death of the widow, and, as their legacies were not given them until the death of the widow, they did not vest, but lapsed.   Warner v. Durant, 76 N. Y. 133;  Smith v. Edwards, 88 N. Y. 92.   Hence their representatives have no interest in this matter, the amounts of their several legacies passing to the next of kin of the testator, among whom are the children of Robert Rennie, the contestant, Agnes Leech being one of them.   Their right to appear in person, instead of by the executor or administrator of their deceased father, is not questioned by the learned counsel for the administrator, although it became a part of his estate to be administered.   However, as the point has not been made, they will be treated as proper parties.   As such, they object to the credit allowed to the executor, Cummings, for the money paid by him as the cost of the addition to the dwelling house.   That objection, in the abstract, must be regarded as well taken.   If the tenant for life make improvements upon the premises, he cannot claim compensation for the same from the reversioner or remainderman, though he is under no legal obligation to do more than keep the premises in repair.   1 Washb. Real Prop. (3d. Ed.) 110, par. 24, citing Corbett v. Laurens, 5 Rich. Eq. 307.   The same rule, on like facts, applies as between landlord and tenant.   A mere knowledge by the remainderman or reversioner

of such an addition or improvement, which is alleged in this case, is not sufficient to render it a proper charge against the corpus of the estate. There must be evidence of their assent that it be so charged. There might be cases where an expenditure should be apportioned between the life tenant and remainderman, as where an improvement, which is beneficial to both, is made under the direction of the public authorities, but not where it is voluntarily done by the life tenant for his own comfort or convenience. Still, it is not intended here to say that the administrator with the will annexed can be held liable for the devastavit—the misapplication of funds—by his predecessor, and especially after decree settling his accounts. In England, by St. 30 Car. II. c. 7, it was enacted that, if an executor de son tort wastes the goods and dies, his executor shall be liable in the same manner as his testator would have been if he had been living. And it was afterwards adjudged that a rightful executor, who wastes the goods of the testator, is, in effect, an executor de son tort for abusing his trust (3 Mod. 113), and his executor or administrator is made liable to a devastavit by St. 4 & 5 W. & M. c. 24. But I know of no such statute or ruling of the courts in this country. We hold, on the contrary, that even the fraud or negligence of one executor, who has thereby committed waste, is not chargeable to his coexecutors unless they, in some way, contribute thereto, or might have prevented it by the exercise of due vigilance. It would be clearly unjust to hold a successor personally liable for the waste of any of his predecessors. Neither their father nor the present contestants were made parties to that first accounting proceeding, nor any of the subsequent ones, and hence it is believed that, notwithstanding his various accountings and discharge, the executor, Cummings, is still liable to account to these contestants, and to refund to them their share of the funds so misapplied by him. Their remedy is not against the administrator in this proceeding. The executor, Cummings, was bequeathed a legacy of $500 "as a small acknowledgment for his services as my executor," but not payable until after the death of testator's widow. It is not expressed to be in lieu of his commissions, and I think he is entitled to them in addition. The interest received by the accounting party since the death of the life tenant, if any, must be accounted for here. Ordered accordingly.