or any county judge within his county, shall have summary jurisdiction, upon complaint of any citizen, to review such action or neglect. Such a complaint shall be heard upon such notice as the said court or. justice or judge thereof shall direct. In reviewing such action, or neglect, the court, justice or judge shall consider, but need not be controlled by, any action or determination of the regularly constituted party authorities upon the questions arising in reference thereto, and shall make such decision and order, as under all the facts and circumstances of the case, justice may require. For any of the purposes of this section, service of a writ of mandamus, certiorari, order or other process of said court or justice or judge thereof upon the chairman or secretary of such convention, committee or board, shall be sufficient."

This section is very broad, and confers wide summary powers upon the court; the purpose clearly being to enable the court to act promptly to correct fraudulent practices and compel fair conduct of primary elections. So far as concerns the right of any person to participate in a primary election, or to enroll or to exercise any right with regard to such elections, the court may issue a writ of mandamus or certiorari. Neither of these remedies would be appropriate to the facts upon which the petitioner relies. It is, however, within the power of the court, in a proper case, to summarily set aside a fraudulent primary election and order that a new election be held. Matter of Rabbitt v. Garand, 89 App. Div. 119, 85 N. Y. Supp. 473. Such is the clear intention of the section quoted above. Whether the court, having the power, will exercise it, rests in its sound discretion, and must be determined in each case by the facts of that particular case.

The section is not punitive, but corrective, and designed merely to cancel unlawful proceedings, which have resulted or may have resulted in the declaration of a false result. If upon the application itself it appears reasonably clear that the unlawful acts complained of could not have affected the result of the election and at most only served to swell the apparent majority of the successful candidate, a case is not presented in which the court is bound to act. Such is the case made by the present applicant. Disregarding his general allegations, and considering only the particular districts which he specifies as those in which fraudulent practices prevailed, it is apparent that these frauds, if they existed precisely as he alleges, could not have affected the general result. We are therefore of the opinion that no case was presented for a summary order under the section above quoted, and that the application was properly denied.

Order affirmed. All concur.

---

### In re SCHMITT.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. WILLS (§ 687*)—ESTATES CREATED—ESTATES IN TRUST—CONSTRUCTION OF TESTAMENTARY TRUST—LIMITATION OVER.

Where testator devised to his executors a sum in trust for his son, the income to be paid to his guardian for his benefit, and the principal to him when he reached the age of 30, if in the opinion of the executors he had led a good and honorable life, otherwise the executors to have power to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

revoke the gift, the sum then to be paid over to the testator's brothers, and the son died at the age of 21, having led a good and honorable life up to that time, and the executors had never revoked the gift to him, the brothers cannot claim the fund; since the gift over to them was expressly conditioned upon a revocation of the gift to the son by the executors.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1638–1643; Dec. Dig. § 687.*]

2. WILLS (§ 687*)—ESTATES CREATED—ESTATES IN TRUST—CONSTRUCTION OF TESTAMENTARY TRUST—LIMITATION OVER.

Where a testator devised to his executors a sum in trust for his son, the income to be paid to his guardian for his benefit, and the principal to him when he reached the age of 30, if in the opinion of the executors he had led a good and honorable life, otherwise the executors to have power to revoke the gift, which was then to be paid over to the testator's brothers, the son had a vested interest in the fund, subject to being divested upon the happening of a condition; and where the son died at the age of 21, having led a good and honorable life up to that time, and the executors had never revoked the gift to him, this interest became a part of his estate, and passed to his administrator, to whom the fund should be paid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1638–1643; Dec. Dig. § 687.*]

Appeal from Surrogate's Court, New York County.

Judicial settlement of the account of Conrad R. Schmitt as testamentary trustee under the will of Albert Gieseler, deceased. From part of a decree of the Surrogate's Court, Rose Walters, as administratrix of Wilhelm Gieseler, appeals. Reversed.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Henry C. Botty, for appellant.
George Haas, for respondent.

SCOTT, J. This is an appeal by Rose Walters, as administratrix etc., of Wilhelm Gieseler, deceased, from so much of a final decree of the Surrogate's Court as provides that a certain legacy of $2,000 contained in the will of Albert Gieseler, deceased, is payable to the German Hospital, the residuary legatee named in said will.

There is no dispute as to the facts. By his will Albert Gieseler, after certain specific legacies, gave his entire estate to his executors, in trust to pay over certain sums to certain specified persons. He directed them to retain and invest the sum of $2,000 for the benefit of his son Wilhelm, paying him the interest annually until he arrived at the age of 25 years, and then paying him the principal. Then followed the provision which has given rise to this controversy. It reads as follows:

"To retain and invest the further sum of two thousand dollars and to pay the income thereof to the guardian of my said son, Wilhelm Gieseler, for his benefit during his minority and thereafter to him personally, until he attains the age of thirty years. And, if in the opinion and judgment of my said trustees, my said son shall have led a good and honorable life during said time they may pay the said additional sum of two thousand dollars to him absolutely.

"And if at any time during the period for which the said additional sum of two thousand dollars is so held in trust for my said son, his conduct shall

be such as not to meet with the approval of the said trustees then I hereby authorize and empower them to revoke the trust and gift of such additional sum of two thousand dollars and direct them to pay the same to my brothers Gustave Gieseler and Wilhelm Gieseler hereinafter named in equal and like shares."

Wilhelm Gieseler died soon after attaining the age of 21 years. It is conceded that up to the time of his death he led a good and honorable life, and that the executors of his father's will never revoked the gift to him. This fact precludes any claim on the part of the brothers of the testator for the gift over to them was expressly conditioned upon a revocation of the gift by the executors.

The only question remaining is whether, in consequence of the death of Wilhelm before attaining the age of 30 years, the legacy lapsed and went to the residuary legatee, or whether Wilhelm had such a title to or interest in the corpus of the fund as survived his death and became a part of his estate. The learned surrogate took the former view. We incline to the latter. An analysis of the will shows that it was the purpose of the testator to set apart and segregate this sum of $2,000 from the rest of his estate, and to create it a separate fund, as to the disposition of which he gave special instructions. The fund was to be held primarily for the benefit of Wilhelm, who was to receive the income until he arrived at the age of 30 years, and then, if he lived a good and honorable life, the principal was to be paid over. Only in the event that his conduct failed to meet with the approval of the trustees, and they affirmatively revoked the gift, was it to be lost to Wilhelm. Under this clause Wilhelm took a vested interest in the principal of the legacy, notwithstanding the fact that the clause contains no words of gift to him, but merely a direction to the executors to pay over. The rule applicable to the case is thus laid down in Warner v. Durant, 76 N. Y. 133, which dealt with a somewhat similar bequest:

"Where the gift is to be severed instanter from the general estate for the benefit of the legatee, and in the meantime the interest thereof is to be paid to him, that is indicative of the intention of the testator that the legatee shall, at all events, have the principal, and is to wait only for payment until the day fixed."

See, also, Bushnell v. Carpenter, 92 N. Y. 270.

The son Wilhelm, therefore, took under the will a present, vested interest in the fund, subject to being divested upon the happening of a condition subsequent. Such an interest is descendible and devisable. Kenyon v. See, 94 N. Y. 563. Since Wilhelm has now died, the condition upon which his interest might be divested cannot arise. Hence he retained his vested interest until his death, when it became a part of his estate, and passed to the administratrix, to whom it should be paid.

The decree, in so far as appealed from, is therefore reversed, and the proceedings remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion, with costs to the appellant to be paid out of the estate. All concur.