HERMANN H. CAMMANN and WILLIAM D. STEWARD, as Executors of and Trustees under the Last Will and Testament of EDMUND S. BAILEY, Deceased, Respondents, v. THEODORUS BAILEY and Others, Appellants, Impleaded with FLORENCE BAILEY LAWRENCE and Others, Respondents.

(First Department, April 4, 1913.)

WILL CONSTRUED—VESTING OF REMAINDERS POSTPONED UNTIL DEATH OF WIDOW—WHEN CONTINGENT REMAINDERMEN CANNOT DISPOSE OF INTEREST BY WILL.

In construing a will the court seeks the intent of the testator, and the so-called canons of construction must give way where that intent may be ascertained from the will itself.

A testator having made certain specific bequests and having directed that a sum be set aside for the benefit of one of his children in order to equalize bequests which his other children had received under the will of a relative, gave to his wife the life use of certain realty free of all charges which were to be paid by his trustees. The residue of his estate he placed in trust for the life of his wife, directing his trustees to pay her a certain annual income for life. There was no direction for the disposition of the balance of the income until the specific provisions for the wife were paid, so that the interests of the children were subject to the life interest of the wife. The testator further provided that the balance of the income from the trust fund should be divded among his children or the descendants of any deceased child during the term of the trust. Upon the death of his wife he directed that the whole residuary estate including that set apart for the wife should be divided into as many equal shares as there were children or descendants of deceased children, " one share for the benefit of each child and one for the benefit of the descendants taken together of any such deceased child," the shares to be held and managed by the trustees and the income paid during the infancy of the person for whom it was held, the beneficiary on reaching majority to be paid the net income of the share held for him. On the sons of the testator attaining the age of thirty years the principal held for them was directed to be paid over to them or to their lawful issue. From the shares held for the testator's daughters a certain sum

was to be paid to them on reaching thirty years of age or in the case of the death of a daughter to her issue *per stirpes* and in case there were no issue the share to be paid to a charitable corporation named.

*Held,* that the division of the estate among the children or their descendants was not to take place until the death of the wife and that until said time there was no vested remainder which a child dying without issue before his mother could dispose of by last will and testament.

LAUGHLIN and CLARKE, JJ., dissented.

APPEAL by the defendants, Theodorus Bailey and others, from a judgment of the Supreme Court in favor of the plaintiffs and certain of the defendants, entered in the office of the clerk of the county of New York on the 10th day of October, 1912, upon the decision of the court rendered after a trial at the New York Special Term.

Charles H. Beckett, for the appellants Theodorus Bailey and Alice Bailey.

Henry W. Jessup, for the appellant Susannah Gibson Bailey.

Albert W. Putnam, for the respondents Florence Bailey Lawrence and others.

Henry H. Man, for the plaintiffs, respondents.

INGRAHAM, P. J.—Edmund S. 'Bailey, a resident of the county of New York, died on November 4, 1908, leaving a last will and testament and two codicils thereto, which were admitted to probate by the surrogate of the county of New York. He left him surviving a widow, Susannah Gibson Bailey, and four children by a former wife. One of the testator's children, a son named Edmund Smith Bailey, died on January 5, 1912, at the age of twenty-three years, leaving a last will and testament which was duly admitted to probate, and which left substantially

all his property to his trustees, the income to be paid to his wife for life and the remainder to his issue, with a remainder over in default of issue to such person or persons as his wife should designate by a last will and testament.

The question presented on this appeal is as to what interest, if any, of the estate of the testator, Edmund S. Bailey, passed under the will of his son, Edmund Smith Bailey, to the legatees or devisees therein named; and the question presented depends upon whether Edmund Smith Bailey took a vested remainder in the property left by the will of the testator, Edmund Smith Bailey. The testator, as referred to in this opinion, will be Edmund S. Bailey, under whose will the trust was created. As before stated, the testator left two sons and two daughters. One son died after the death of the testator under thirty years of age. I shall discuss this question on the assumption that the one object we have is to ascertain the intent of the testator, and that all so-called canons of construction are to give way in case that intent can be ascertained from the will; and for that purpose an analysis of the will is necessary.

By paragraphs 3 and 4 of the will the testator gave to the sons certain articles of personal property, such as portraits, jewelry and family heirlooms. The 4th clause recited: " And whereas my late wife's aunt Mrs. Jane V. C. Cooper died some years since leaving a will by which she made certain provisions for the three elder of my children and no provision for my youngest child, Edmund S. Bailey, whereby should my property be equally divided among my children, he would not be so well off pecuniarily as the others, owing to the said provision made for them by Mrs. Cooper, now in order to remedy such inequality, I provide that before division of my residuary real estate into shares under the ninth clause of this will, my trustees shall set apart therefrom for the benefit of my son Edmund S. Bailey, the sum or value in their opinion of Twenty thousand ($20,000) dollars and after the division of the balance of the

said residuary estate into as many equal shares as I leave children or descendants of children under the said ninth clause, the said $20,000 so first set apart shall be added to the aliquot share of my son Edmund S., in the balance of said residuary estate, and be held for his benefit and belong to him, subject to the provisions as to the income and principal of my residuary estate, and the trust shares therein hereinafter contained." The testator then passes to what seemed to have been the predominant intent which controlled the disposition of his property, i. e., to provide for his wife. By the 6th clause of his will he gives all of his household furniture, books, linen and plate, etc., to his wife absolutely and then gives her the use of his house in the city for her life, free of all charges for taxes and assessments, which are to be paid by the trustees, to which by a codicil to the will he added a life estate in his country home on Long Island, also free from all charges for taxes and assessments, which are to be paid by trustees. By the 7th clause of his will, all the rest, residue and remainder of the estate is given to trustees with detailed directions as to its investments. He directs that the trust fund shall continue during the life of his wife and from the net income thereof the trustees shall pay to her quarterly $5,000, making an annual income of $20,000 a year. Here is the clearly expressed intention that his wife shall have these two houses free of all charges and $20,000 a year during her life, and there is to be no disposition of any of the income of the estate during the life of his wife until these specific provisions for his wife shall have been paid; no diminution of income shall affect the position of his wife and the interest of the children was subject to the interest of the wife during her life. Then follows a direction that out of any balance of income received from the residuary estate, after his wife has been provided for, the trustees should pay to Edmund the income earned from the $20,000, which the 4th clause of the will provided should belong to Edmund; that

balance of net income shall be divided among his four children or descendants of children including the said Edmund, the trustees to apply such shares of income to the use of those of his children or descendants who shall be infants and pay over to those of them who shall have reached majority the shares of income set apart for them, the descendants of any deceased child to take the share which the parent would have taken if living. There is, as to descendants, during life of the wife, the provision that the descendants of the deceased children should take the parent's share of the income. The testator in this provision had in mind the possibility of one of the children dying during the continuance of the trust estate leaving descendants; if a child died leaving descendants the income was to be paid to the descendants. The income was to be divided, and that means from time to time as it accrued, into as many shares as he left children or descendants of children. So, it seems to me, that from time to time the trustees should make division and pay over to the children or descendants of children the share of income, and that provision was to continue during the term of the trust.

By the 9th clause provision is made for division of estate after the death of his wife and for the final disposition of the trust estate. Upon the death of his wife he directs that the whole residuary estate, including real property left to his wife or proceeds if sold, should be divided by trustees, subject to provision for the income of Edmund, "into as many equal shares as I shall leave children, or descendants of children, one share for the benefit of each child and one for the benefit of the descendants taken together of any such deceased child, and the said shares shall be held and managed by my trustees and the income" paid as directed. Here the testator seems to have had in mind the possibility of a child dying before the termination of the life estate of the wife of testator. But there was to be no division of the residuary estate until the death of his

wife, and then the residuary estate was to be divided into as many shares as he should leave children or descendants of children. The residuary estate having been thus divided, the trustees were directed to hold each share during the infancy of the person for whom it was to be held, and to apply the income for the benefit of such persons, " and as each of said beneficiaries reaches the age of twenty-one years, he or she shall be paid thereafter the net income' of the trust share held for him or her; unless such person was born after my death, in which case he or she shall be paid the principal of the trust share held for him or her to the time of attaining majority." Further it is provided: " Upon the attaining of the age of thirty years by either of my sons, the principal of the share until that time held for such son shall after the death of my wife be paid over, transferred or conveyed to him," and added: " Should either of my sons or daughters at any time die before me, leaving lawful issue surviving, such issue shall take the same share of principal and the same share of income the parent, my son or daughter, would have taken under this will if living."

The 10th clause relates to the shares of his two daughters, which were to be held in trust during their lives, except that $20,000 should be paid to' each daughter upon her becoming thirty years of age, and this clause contained the provision that in case of the death of a daughter, the share " shall go to her issue, if any, in equal shares, *per stirpes*, but in case she shall leave no issue, then the trust share to that time held for her shall go to " a charitable corporation named. Thus the testator by most minute provisions provided for the disposition of the property to be held for each of his sons in the event of his son dying during the lifetime of the testator, and further provided for the shares to be held for his daughters, making provision for the ultimate disposition of the trust property dependent upon the daughters' dying with or without issue. But it is also to be noticed that with regard to the $20,000 which each

daughter should receive at the age of thirty there was no provision made for the disposition of that sum in the event of the daughter dying before reaching that age. If a daughter should die before thirty years of age she would not be entitled to receive this sum of $20,000, and there is no provision for any other disposition of that sum in that event. The 11th and 12th clauses of the will give to the executors and trustees power of sale of all the real property and contain directions as to the management of the trusts. The 13th clause provided for the appointment of executors and trustees.

The will was dated April 18, 1904. Testator's oldest son, the appellant, became thirty years of age in January, 1912, and, therefore, apparently was twenty-two years of age when the will was made. Both daughters were under age and unmarried at the date of the making of the will. The youngest son, Edmund, was fourteen or fifteen years at time will was made. The testator made two codicils to the will, first dated October 9, 1906, by which he left his country house to his wife, as stated; the second codicil, dated September 23, 1907, in which he substituted a new executor for Mr. Man, who had died in the meantime, in each case republishing his will as modified by the codicil, and he died November 4, 1908, while his youngest son, Edmund, was still an infant. The testator's widow is still alive, but his youngest son died on or about January 5, 1912, about twenty-three years of age, leaving a last will and testament by which he gave all of his property to his executors in trust to pay the income thereof to his wife during her life with a remainder to her issue or, in default of her issue, to such persons as his wife should appoint by her last will and testament. The court found that since the death of the testator the income had amounted to upwards of $60,000 a year; that the additional income, beyond that required for the provisions for the wife, was divided among the testator's children up to the death of the youngest son January, 1912. The court below held that the

testator's son Edmund was not divested of his interest in the estate either income or remainder by his death before he reached the age of thirty years; that his interest in the income and remainder of the estate passed under his will, and, during the lifetime of the testator's widow, the income payable on one-quarter of the residuary estate, and the principal of such part should be payable in such manner as provided by the will of said Edmund, the testator's youngest son.

The disposition of the surplus of income and the ultimate disposition of the principal are provided for by different clauses of the will and the provisions in relation to them are quite different. The testator arranged to divide the balance of the income into as many shares as he had children or descendants of children. This division of income necessarily related to the period in which the income has been received and is to be divided. There could be no division of income until it had been created by the return on the investments and then it was to be divided into as many shares as the testator had children or the descendants of children. That income was payable to the children and the descendants of a deceased child, and under this provision no one else could be entitled to any part thereof. The testator in express terms limits the payment of that income to a child or the descendants of a deceased child. Here is express provision made for his grandchildren in case the parent should be dead at any time during the continuance of the trust. There was no vesting of income. As this income came into existence and thus became the income of the estate it was directed to be distributed to the four children, but after the death of the youngest son without leaving descendants there was no direction by the testator that the income should be paid to any one except brothers and sisters and I can find no expression in this will indicating the intention to pay the surplus income during the life of his wife to any person other than those di-

rected by the testator to whom it should be paid, namely, the children or the descendants of a deceased child.

As to the corpus of the estate, the situation is somewhat different. The property existed at the time of the death of the testator. He gave it to his executors in trust, with a direction to sell the real property, except that which he had given to his wife for life and there was, therefore, an equitable conversion of the decedent's real estate. That was by the express provision of the will to continue in one trust during the life of his wife. The primary object of the testator was to insure to her the support which he intended she should receive. There was and could be no division of his estate into shares during the life of his wife, for during that period the whole of the estate was to be preserved to produce the income which he had provided should be paid to her. It was only the surplus or that which remained that was to be divided among his children. The testator evidently recognized the possibility of depreciation in value of the property and diminution in income, either before or after his death. But, whatever might happen, the primary object of the trust and the preferential payment of the income was to make good to the wife the amount of support that he intended she should receive. Thus by express terms of the will the first division of the estate, the first vesting or the first setting apart of the shares of each child, was to happen after the death of the wife. It was then that the share of each child should come into existence, and it seems to me that it was then and then *only* that a share existed. It was on the death of his wife that the trustees were to divide the property that they had held in one trust during the life of his wife into as many shares as he had children or descendants of children whose parent was dead, the decsendants to take by way of representation. As before stated, when the will was made his eldest son had just become of age, and we assume the other children were unmarried and minors, and the youngest son did not become of age until years

after the testator died. But for the last clause of the 9th clause of the will, I should have no hesitancy in saying the testator had deliberately intended that this provision for his children should be contingent upon their surviving their mother, the life beneficiary; but the further provision is that in the event of the death of any one of them before the death of their mother the descendants of the one dying should take by way of representation the parent's share. Undoubtedly the moment the testator's wife died the shares would vest, but it was to the condition then existing that he directed the disposition of the estate and the ascertainment of just who were to become the owners of the shares, then for the first time created. Therefore, I am inclined to the view that futurity was of the nature of this gift.

I am well aware of a line of cases, of which Warner v. Durant (76 N. Y. 133), Canfield v. Fallon (43 App. Div. 561; affd., 161 N. Y. 623), Vanderpoel v. Loew (112 id. 167) and Steinway v. Steinway (163 id. 183) are examples. But in each case the will was different from the will in question. Take the case of Vanderpoel v. Loew (112 N. Y. 167), which was greatly relied upon at Special Term and by the respondents upon this appeal. In that case the will provided: "Whenever any one of my said children shall depart this life leaving lawful issue him or her surviving, then my said executors shall set apart one undivided one-fourth part of all the rest, residue and remainder of my estate so invested for the benefit of my children as above mentioned, * * * and shall invest the same in the way and manner above mentioned, for the use and benefit of the issues of such deceased child, * * * and shall use and employ the rents, issues, profits and income thereof for its or their maintenance and education; or in case it or they shall be of a sufficient age to justify the same, then to pay over such rents, issues and profits to it or them, until it or they shall respectively arrive at the age of thirty years when the whole of

the principal so set apart as above mentioned, or such part thereof as they may be respectively entitled to (if the issue shall consist of more than one) shall be paid over to it or them; to have and to hold the same to it or them, to its or their sole use, benefit and behoof forever." In that case the contested question was whether the power of alienation was suspended unlawfully, and the Court of Appeals held that the intention of the testator was to divide his estate into five separate trusts, no one of which was dependent upon more than two lives in being. But it was held that when the income and prinicpal were given in equal shares, though out of one fund kept *in solido* for convenience of investment, the severance of the trust into its component parts has been adjudged though the fund remains undivided. But, in that case, there was no postponement of the division of the estate into shares or the creation of the separate shares until the termination of the life estate. Immediately upon the death of the child who was entitled to the income during his life the executors were to set apart one-quarter part of the rest, residue and remainder of the residuary estate for the use and benefit of the issue of such deceased child, and the fact that there was no direction to cut into as many parts as the children the testator left surviving did not prevent the court from decreeing such a severance immediately upon the death of the life beneficiary. Also, in that case, the beneficiary was to receive the whole income until he arrived at the age of thirty years, when the principal was to be paid. Here there is no such provision until the death of the testator's widow, which is the first time at which the trustees can make a division of the estate. So in the case of Warner v. Durant (76 N. Y. 133) testator gave the sum of $275,000 to trustees to receive the rents, issues and profits thereof and during the continuance of the trust to pay annually seven per cent interest upon certain specified sums of money of that $275,000 to several persons named, and at the expiration of five years to pay over the principal sum, upon

which interest had been directed to be paid, to such persons to whom such interest money is directed to be paid. It was said by Folger, J.: "Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. Here the gift was at first to executors, to hold in trust for five years, and at the expiration of that period to pay over to the legatee. But this rule does not act in this case; for there has been a distinction grafted upon it. It is this: Where the gift is to be severed *instanter* from the general estate, for the benefit of the legatee, and in the meantime the interest thereof is to be paid to him; that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait, only for the payment, until the day fixed." Speaking of the will in that case, the court said (p. 140): "There was then a gift, though to executors in the first instance, of specified property at once to be severed from the bulk of the testator's estate for the benefit of the legatee, to be paid to him at the end of five years; and, in the meantime, the interest thereon to be paid to him. The intent of the testator, thus indicated, was that the legacy should vest in Oliver Blush at once."

In this case the direction of the testator was to the direct contrary; there is no division of any share of the estate until the death of the testator's wife, and then at once there comes into existence the several shares of the estate, then at once each share vests in a child whether he had arrived at the age of thirty years or not; but it seems to me that until that time arrives the distinction that had been grafted upon the rule, indicated by Folger, J., did not apply.

So in Steinway v. Steinway (163 N. Y. 183) the testator gave all his shares in the corporation of Steinway & Sons to his executors to be held by them until January 1, 1904; one-fourth part for the benefit of his brother William, or in case of his

death prior to January 1, 1904, to and for his children, with further provisions for the other shares of the stock. The court held that the shares vested absolutely in William's children at the time of the testator's death, the court saying: " The import of the words employed is that each one of William's children is to take both income and principal in equal proportions, and by that the testator meant that each one should take what he intended to give him separately and solely for himself or herself." That decision was based on Warner v. Durant (*supra*).

This case presents the same distinction between it and the case at bar as was noticed in the case of Warner v. Durant (*supra*).

On the other hand, we have a line of cases that seem to me to clearly hold that where the sole gift is a direction to pay over, convey or transfer, at a future time, and the interest of a legatee or a devisee is not to be severed from the corpus of the estate until the death of the life beneficiary, then there can be no vesting until the death of such life beneficiary. (Delafield v. Shipman, 103 N. Y. 463; Schlereth v. Schlereth, 173 id. 444; Herzog v. Title G. & T. Co., 177 id. 86; Shipman v. Rollins, 98 id. 311; Matter of Crane, 164 id. 71; Matter of Baer, 147 id. 348; Salter v. Drowne, 205 id. 204.)

We have pressed upon us in this case, both by the appellant and the respondents, certain so-called canons of construction which it is claimed should be applied in the construction of this will. Thus, it is said by the appellant that there is no direct devise or bequest in the will, but that the beneficiary takes by virtue of a direction to divide or convey, and that, therefore, there can be no vesting until the time of such division. On the other hand, the respondents contend that the law favors the vesting of estates, both real and personal, and the presumption is always against intestacy, and that such a construction will be given to the will as will retain the testator's property in the hands of his descendants rather than in others

not of his own blood. As I view it, all of those canons of construction have been applied as aids to ascertain the actual intention of the testator and that when within the four corners of the will such intention can be ascertained, effect must be given to it rather than applying established rules which will defeat such intention. The surplus income of the testator was to be divided among his children, and he had in mind the fact that one or more of his children, might die during the lifetime of 'his wife, and so he provided that in the event of a child dying leaving issue the income should be paid to such issue. That was the only exception that he made to the general provision that the surplus income should be divided among his surviving children. Here the intention was clearly expressed, it seems to me, that the income should be paid to his own children, with the single exception that where a child died leaving issue the issue should take the parent's share of the income; and here care seems to have been taken to provide that no person should receive any part of this income except a child or the descendants of a deceased child. Then on the death of his wife, his primary intention having been fulfilled, the final disposition of his estate was provided for. The testator had two daughters and two sons. The shares of the two daughters were, with the exception of the $20,000, to be paid to each of them when they reached thirty years of age, to be held in trust during their lives, and the remainder to be paid to their issue upon their death. Here again the testator has confined the class who would ultimately receive any portion of his estate to his own descendants; and the provision in relation to the distribution of his property among his sons seems to me to have been intended to carry out the same intention. If a son died before the testator, leaving issue, the issue was to take the parent's share. If a son died after his death, leaving issue, the issue would take the parent's share; but, if either of his sons survived the testator's widow, there was to be set apart for that

son at her death a share of his estate, and that share was to be held by the trustees until the son arrived at the age of thirty years, when it was to be conveyed or transferred to him. Undoubtedly upon the death of the widow a share for each son was then created. That son, if then twenty-one years of age, was to receive the whole income of the share until he became thirty years of age and was then to receive the principal. If in the meantime he died leaving issue, the issue was to receive the share held for him, and undoubtedly if the son was alive at the time of the death of the testator's widow, the share would vest upon her death, and would have been subject to his disposition either by transfer or by a testamentary disposition of it. But one of the testator's sons died without issue during the life of the widow; and to hold that the son so dying had power to dispose of such a share as would have been subsequently created for his benefit if he had survived his mother, would defeat the whole intention of the testator and divert his property from his own descendants in opposition to the testamentary disposition that he intended. The distinction between this case and the case of Dickerson v. Sheehy (156 App. Div. 101), decided herewith, seems to be crucial. There the beneficiary was entitled to receive the income of his share of the estate until the share should become payable, and there was no express direction that a division of the estate into shares should be postponed until the termination of the life estate. Here the division into shares can only take place upon the death of the testator's widow. A careful consideration of the whole will discloses, I think, that it was the intention of the testator that the death of a son prior to the death of his mother without leaving issue divested him of any interest in the estate, and that, therefore, nothing passed under the son's will.

There is also a question presented upon the appeal of the testator's widow, but I think it clear that the testator's intention was that this provision for the widow was to be in lieu of

all dower or interest in the estate; and that she is not entitled to the interest in the share of the deceased's son, but that as to that share it belongs to his three surviving children.

It follows that the judgment appealed from should be reversed and judgment directed in accordance with this opinion, with costs to the plaintiffs and the appellants to be paid out of the estate.

LAUGHLIN and CLARKE, JJ., dissented.

McLAUGHLIN, J. (concurring). I am unable to see any distinction between this case and the case of *Dickerson v. Sheehy* (156 App. Div. 101), decided herewith, and for the reasons stated in my opinion in that case I think the judgment here appealed from should be reversed, and judgment directed in accordance with the opinion of Presiding Justice INGRAHAM.

DOWLING, J., concurred.

Judgment reversed and judgment ordered as directed in opinion, with costs to plaintiffs and appellants payable out of the estate. Order to be settled on notice.